**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| |
|---|
| **UNITED STATES OF AMERICA,** |
| **v.** |
| **22. RAFAEL LEONER-AGUIRRE,** a/k/a "Tremendo," |
| **Defendant.** |

**Criminal No. 15-10338-FDS**

### OPPOSITION OF THE UNITED STATES TO RAFAEL LEONER-AGUIRRE'S MOTION FOR JURY DETERMINATION OF ATTEMPTED MURDER PREDICATES

The United States opposes the Motion for Jury Determination of Attempted Murder Predicates filed by defendant Rafael Leoner-Aguirre a/k/a "Tremendo." *See* Dkt. No. 1289. Defendant's motion seeks a ruling that "the issue of whether he conspired to commit or further the crime of attempted murder not be considered at sentencing unless submitted to the jury as a RICO predicate offense, and absent a jury's affirmative finding using a reasonable doubt standard." Motion at 1. Defendant's motion is premised on a misunderstanding of RICO conspiracy law. Further, defendant seeks a deviation from well-established law holding that the existence of relevant conduct is determined at sentencing by a preponderance of the evidence. As to Leoner-Aguirre, the government does not need to prove any predicate acts to a jury beyond a reasonable doubt, and if he is convicted of RICO conspiracy, this Court should hold Leoner-Aguirre responsible for all relevant conduct under a preponderance standard. Defendant's Motion should be DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    The Charged Racketeering Conspiracy

On May 15, 2017, the grand jury returned a Fifth Superseding Indictment against the defendant and other leaders, members, and associates of MS-13.  *See* Dkt. No. 1107 (hereinafter, the "Indictment").  Defendant Leoner-Aguirre is one of the defendants charged in Count Two of the Indictment, which alleges a conspiracy to conduct enterprise affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).  *Id.* at ¶¶ 2-31.

In short, the Indictment charges that Leoner-Aguirre and other defendants, "being persons employed by and associated with MS-13, an enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly conspire with each other, and with other persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 enterprise through a pattern of racketeering activity[.]"  *Id.* at ¶ 25.

As alleged, "The pattern of racketeering activity consisted of:

a)   multiple offenses involving trafficking in narcotics, including cocaine, cocaine base, heroin, and marijuana, in violation of 21 U.S.C.§§ 846 and 841(a)(1);

b)   multiple acts involving murder, in violation of Massachusetts General Laws, Chapter 265, Section 1 (murder), Section 15 (assault with intent to murder), Section 16 (attempt to murder), and Section 18 (armed assault with intent to murder), and in violation of Massachusetts General Laws, Chapter 274, Section 7 (conspiracy to commit murder); and

> c) multiple acts involving robbery, in violation of Massachusetts General Laws, Chapter 265, Section 17 (armed robbery), Section 18 (armed assault with intent to rob), and in violation of Massachusetts General Laws, Chapter 274, Section 6 (attempted robbery) and Section 7 (conspiracy to rob)."

*Id.* at ¶ 26.  Further, "[i]t was part of the conspiracy that each defendant agreed that *a conspirator* would commit at least two acts of racketeering activity in the conduct of the affairs of the MS-13 enterprise."  *Id.* at ¶ 27 (emphasis added).

The Indictment provides examples of the alleged means and methods of the conspiracy—*i.e.*, examples of the types of racketeering acts that the defendants agreed that a conspirator would commit.  These examples include six murders committed by MS-13 members in Massachusetts, *see id.* at ¶29(a)-(f), as well as fourteen separate incidents of attempted murder involving twenty victims, *see id.* at ¶ 29(g)-(t).  The examples include the following acts committed by Leoner-Aguirre: (i) an April 6, 2014 attempt by Leoner-Aguirre to murder Victims No. 6 and No. 7 by striking them with a machete, *see id.* at ¶ 29(h); (ii) an April 16, 2014 attempt by Leoner-Aguirre and others to murder Victims No. 9 and No. 10 by shooting at them, *see id.* at ¶ 29(i); and (iii) an agreement in or about March 2015 by Leoner-Aguirre and others to attempt to murder Victim No. 22 with a machete, *see id.* at ¶ 29(n).

2. <u>**Expected Evidence at Trial and Government's Position Regarding Statutory Maximum Applicable to Leoner-Aguirre**</u>

The government expects that the evidence at trial will show that Leoner-Aguirre—in addition to personally being involved in the attempted murders listed as examples of the means and methods of the conspiracy—was the leader of the Enfermos Criminales Salvatrucha ("Enfermos") clique of MS-13.  All but one of the

"Group Four" defendants scheduled for trial in November 2017 alongside Leoner-Aguirre were members of the Enfermos clique, including Hector Ramires a/k/a Cuervo and Bryan Galicia-Barillas a/k/a Chucky, the two defendants the government seeks to hold responsible for the murder of Katerin Gomez. *See* Indictment at ¶ 29(a).

The evidence will show that the Enfermos were a fledgling group comprised of younger MS-13 members (generally "paros" and "chequeos" who had not gained full membership as "homeboys") leading up to 2014, when defendant Leoner-Aguirre arrived in Boston and took over the leadership of the Enfermos.[1]

Based on how the racketeering conspiracy is charged and based on the notice the Indictment provides Leoner-Aguirre, the defendant is subject to a twenty-year statutory maximum no matter what the evidence at trial shows, as opposed to being subject to an enhanced life sentence. The specific sentence to be imposed upon a guilty finding should be based on, among other things, the relevant conduct attributable to defendant under the customary sentencing framework, which allows imposition of a sentence by a judge on a preponderance of the evidence standard rather than by a jury on a beyond a reasonable doubt standard.

---

[1]   The government anticipates that the evidence will likely further show that in his capacity as the leader of the Enfermos, Leoner-Aguirre encouraged or authorized members of the Enfermos to murder rival 18th Street gang members to reclaim Chelsea as MS-13 territory. At the very least, much of the violence committed by members of the Enfermos may be attributable to Rafael-Aguirre. Given those facts, one can envision a scenario where the government could have charged Leoner-Aguirre in a manner that would make him eligible for a life sentence. *See* 18 U.S.C. § 1963 (allowing for an enhanced penalty of life if the RICO violation is based on a racketeering activity for which the maximum penalty includes life). As presently charged, however, the government is not seeking to hold Leoner-Aguirre responsible for a murder that would be make him eligible for a life sentence.

Defendant now demands that the examples of the means and methods of the conspiracy—including attempted murders committed by the defendant—be submitted to the jury, and further, that relevant conduct for sentencing purposes be limited to only those predicate acts found by the jury as having been committed by Leoner-Aguirre beyond a reasonable doubt.   Such a request runs counter to established law and should be denied.

## **ARGUMENT**

### 1.   **The Government is Neither Required Nor Limited to Proving Two Predicate Acts by the Defendant to Convict Him of RICO Conspiracy**

Like the defendant's Motion for a Bill of Particulars, *see* Dkt. No. 1286, the defendant's requests in this motion are premised on a foundational misunderstanding about the law on RICO conspiracies and what the government needs to prove at trial to convict the defendant of the charged conspiracy.   *See, e.g.*, Motion at pp. 1-2 ("Given the requirement of two RICO predicates, the defendant assumes ...."); *id.* at p. 7 ("The government should not be permitted to select predicate offenses to present to the jury that it did not present to the defendant upon indictment.").

The defendant is under the mistaken impression that convictions for racketeering conspiracy require the government to prove two RICO predicates as to each defendant, and the government must allege those two RICO predicates in the indictment.   This is not true, and the defendant continually conflates the law on substantive RICO violations (which requires the government to prove predicate acts) and the law on RICO conspiracy (which does not require such proof).   *See, e.g.*, *Salinas v. United States*, 522 U.S. 52, 61-66 (1997) ("It makes no difference that the

substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense.").

Well-established law makes clear that the government does not need to prove that each defendant committed two racketeering acts; the government is neither required to, nor limited to, provide proof of what the defendant characterizes as "predicate acts" listed in the indictment; and those acts are just examples of the means and methods of the conspiracy.  *See* Government's Response to the Motion for Bill of Particulars, filed separately today (collecting cases and discussing law).  *See also Salinas*, 522 U.S. at 61-66 (holding that there is no requirement that the defendant himself commit or agree to commit the two predicate acts that would be required for a substantive RICO violation); *United States v. Ciccone,* 312 F.3d 535, 542 (2d Cir. 2002) (holding that a "conspirator charged with racketeering conspiracy need not commit ... the predicate acts ... to be found guilty of the racketeering conspiracy, for it suffices that he adopt[ ] the goal of furthering or facilitating the criminal endeavor") (quotation omitted); *Laverty v. Massad*, No. 08-40126-FDS, 2009 WL 1873646, at *6 (D. Mass. Mar. 10, 2009) (Saylor, J.) (holding that there is "no[ ] need to allege that each conspirator agreed to commit (or actually committed) two or more predicate acts," "no overt act is required" to prove RICO conspiracy, and "a defendant may be part of a RICO conspiracy even if he has not committed a substantive RICO violation") (citing *Salinas* and *United States v. Cianci,* 378 F.3d 71, 88 (1st Cir. 2004)).

Under the defendant's misguided view of RICO law, every RICO conspiracy case brought under 18 U.S.C. § 1962(d) would require proof of two substantive RICO violations—and worse, proof beyond reasonable doubt of two predicate acts by each defendant—positions that are inconsistent with the law and that would make the RICO conspiracy provision worthless. *See, e.g.*, *United States v. Glecier,* 923 F.2d 496, 500 (7th Cir. 1991) ("If the government were required to identify, in indictments charging violation only of section 1962(d), specific predicate acts in which the defendant was involved, then a 1962(d) charge would have all of the elements necessary for a substantive RICO charge. Section 1962(d) would thus become a nullity, as it would criminalize no conduct not already covered by sections 1962(a) through (c). Such a result, quite obviously, would violate the statutory scheme in which conspiracy to engage in the conduct described in sections 1962(a) through (c) is itself a separate crime."); *United States v. Applins*, 637 F.3d 59, 81 (2d Cir. 2011) (citing *Glecier* and holding same).

Contrary to defendant's understanding, "because a RICO conspiracy charge need not specify the predicate or racketeering acts that the defendants agreed would be committed, it is sufficient to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity." *Applins*, 637 F.3d at 81 (2d Cir. 2011) (citing *Salinas* and *Glecier*). The Indictment in this case plainly does that. *See* Indictment at ¶ 26 (alleging violations of various federal and state statutory provisions that qualify as racketeering activity).

2.   **There is No *Apprendi* Issue if Defendant is Sentenced to Less Than the Twenty-Year Statutory Maximum for Racketeering Conspiracy**

Much of the defendant's motion is devoted to arguing that the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny require that the jury be required to make determinations beyond reasonable doubt as to the predicate acts for which the defendant should be sentenced.  *See, e.g.*, Motion at p. 3 ("The principles and logic of *Alleyne* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), require that an issue so determinative of the defendant's sentence be submitted to the jury."); *id.* at p. 6 (arguing that "there is a unique rationale for extending *Apprendi* to 18 U.S.C. § 1962(d)").  The logic of *Apprendi* requires no such thing.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that *increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490 (emphasis added).  Defendant seeks to extend *Apprendi* to not only facts that increase the statutory maximum, but also facts that increase the Guidelines range.  In attempting to do so, defendant ignores post-*Apprendi* law making clear that *Apprendi* simply does not apply to sentences less than the statutory maximum.  *See, e.g.*, *United States v. Gonzalez*, 857 F.3d 46, 60–61 (1st Cir. 2017) (dismissing the "now much-rehashed argument that we should expand our understanding of *Alleyne* and *Apprendi* to require a beyond-a-reasonable-doubt finding of facts that enhance the Guidelines range" and holding that "we have repeatedly considered and rejected this argument.") (collecting cases).

The defendant similarly ignores First Circuit law making clear that judicial fact-finding of sentencing factors under a preponderance standard does not run afoul of the Constitution.  *See, e.g.*, *Gonzalez*, 857 F.3d at 61 ("*Alleyne* and *Apprendi* do not require sentencing facts that do not change the statutory sentencing range to be found beyond a reasonable doubt."); *United States v. Cox*, 851 F.3d 113, 120 (1st Cir. 2017) (holding that preponderance standard does not violate Fifth Amendment due process or Sixth Amendment rights).  Indeed, the First Circuit has gone as far as to describe the arguments that the defendant is raising as "meritless."  *United States v. Ramírez-Negrón*, 751 F.3d 42, 48 (1st Cir. 2014) ("[B]oth defendants argued that their sentences violate the Sixth Amendment because they were imposed on the basis of factfinding by a judge on a preponderance of the evidence standard rather than by a jury on a beyond a reasonable doubt standard.  These arguments are meritless.").

Cases around the country similarly make clear that *Apprendi* does not apply where a RICO defendant is sentenced within the statutory maximum.  *See, e.g.*, *United States v. Sahakian*, 446 Fed. Appx. 861, 862 (9th Cir. 2011) (holding that *Apprendi* did not apply because RICO sentence was within the statutory maximum); *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000) (holding that enhanced RICO sentences within the twenty-year maximum did not trigger *Apprendi*).

In this case, the government does not intend to seek a sentence for Leoner-Aguirre beyond the twenty-year statutory maximum for RICO conspiracy.  Given that there is no attempt to "increase the penalty for a crime beyond the prescribed statutory maximum," there is no *Apprendi* issue here.  Consequently, there is no need to submit acts attributable to Leoner-Aguirre to the jury for a finding of guilt beyond

a reasonable doubt.  Consistent with standard sentencing protocols, if a jury finds Leoner-Aguirre guilty of RICO conspiracy, the sentencing judge can and should determine relevant conduct under a preponderance standard.

**3.     The Sentencing Guidelines Make Clear How to Sentence the Defendant for Relevant Conduct if Convicted of RICO Conspiracy**

The Sentencing Guidelines make clear how the Court should sentence a defendant like Leoner-Aguirre if convicted for RICO conspiracy, and the defendant's efforts at charting a new path by having the jury make determinations of relevant conduct beyond a reasonable doubt should be rejected.

The base offense level for a RICO violation is the offense level applicable to the underlying racketeering activity, or nineteen, whichever is greater.  U.S.S.G. § 2E1.1. Pursuant to Section 1B1.3 of the Guidelines, which governs relevant conduct, the "underlying racketeering activity" that determines the base offense level for a RICO violation consists of "any act, whether or not charged against defendant personally, that qualifies as a RICO predicate under 18 U.S.C. § 1961(1) and is otherwise relevant under § 1B1.3." *United States v. Carrozza*, 4 F.3d 70, 77 (1st Cir. 1993).

Further, the underlying activity for a RICO conviction includes both charged racketeering acts as well as uncharged activity, so long as such activity is within the scope of and in furtherance of the criminal activity, and is also reasonably foreseeable to the defendant.  As the First Circuit has stated, "*Carrozza* holds that in a RICO case, in determining the base offense level, the sentencing court *should not limit its relevant conduct inquiry to the predicate acts charged against the defendant*, but instead *should consider 'all conduct reasonably foreseeable to the particular defendant*

in furtherance of the RICO enterprise to which he belongs.'" *United States v. Marino*, 277 F.3d 11, 37 (1st Cir. 2002) (citing *Carrozza*, 4 F.3d at 74) (emphasis added).

Importantly, "when conducting a relevant conduct analysis, the district court need only find that the relevant conduct occurred by a preponderance of the evidence." *Marino*, 277 F.3d at 37 (citing *United States v. Caba*, 241 F.3d 98, 101 (1st Cir. 2001)). Federal appellate courts have routinely followed these principles when approving consideration of not only uncharged conduct in determining relevant conduct, but also conduct for which a defendant is tried and acquitted. In *Marino*, for example, the First Circuit found that the district court's consideration of the defendant's attempted murder of rival, for which the jury did not convict him, was not problematic under *Apprendi* because defendant's sentence did not exceed the statutory maximum. 277 F.3d at 38. *See also United States v. Pica*, 692 F.3d 79, 88-90 (2d Cir. 2012) (affirming defendant's sentence for RICO conspiracy where, in determining the guideline range, an acquitted charge was included as relevant conduct, stating: "[a] court may treat acquitted conduct as relevant conduct at sentencing, provided that it find by a preponderance of the evidence that the defendant committed the conduct"); *United States v. Mercado*, 474 F.3d 654, 655-57 (9th Cir. 2007) (affirming sentences in RICO conspiracy prosecution where sentences were based on criminal conduct charged in indictment, but found not proved beyond a reasonable doubt); *United States v. Thai*, 29 F.3d 785, 819-20 (2d Cir. 1994) (finding that court properly considered acts of violence not charged as predicate acts as relevant conduct since they were in furtherance of the RICO conspiracy); *United States v. Darden*, 70 F.3d 1507, 1544-45 (8th Cir. 1995) (finding no sentencing error in a case where defendant was held

accountable under relevant conduct guideline for murder committed by others but for which defendant was deemed to have aided and abetted the murder by a preponderance of the evidence); *United States v. Tocco*, 306 F.3d 279 (6th Cir. 2002) (holding that in RICO conspiracy case, racketeering activity by the defendant's coconspirators was relevant conduct for sentencing purposes).

4.   **The Court's Ability to Conduct a Fair Trial, Impose a Fair Sentence, and Separate Itself from the Executive Branch**

Finally, the prosecution does not share the defendant's purported concerns about the judge being part of the government apparatus and special jury determinations thus being needed to ensure that the defendant is protected against potential prejudice by the judge. *See* Motion at p. 4 (arguing that "the historic role of the jury is to serve as an intermediary between the State and the defendant" and "the 'State' includes not only the prosecutor, but also the judge"); *see also id.* (quoting a dissent from Justice Roberts in *Alleyne* which stated that the Sixth Amendment provides for, among other things, "security against the prejudices of judges, who may partake of the wishes and opinions of the government…").

The defendant's Motion also quotes from, and attaches as an exhibit, a speech by President Trump on MS-13. *See* Motion at p. 4 and Ex. 1. Although the defendant claims that his arguments should not be taken as a lack of confidence in the capacity of this Court, *id.* at p. 4, the defendant nonetheless goes on to say that the "issue is broader" because "the right to a jury, in general, protects a defendant from the risk that a judge may feel obligated to reflect the views of the Executive Branch." *Id.*

There is no reason to believe that the trial judge in this case will feel obligated to reflect the views of the Executive Branch when overseeing the trial or sentencing Leoner-Aguirre or other MS-13 members.  Simply put, this is not a basis to ask for special jury determinations of relevant conduct.

## CONCLUSION

Based on settled law, there is no need for the government to prove to the jury beyond a reasonable doubt that Leoner-Aguirre committed each "predicate act."  Nor is the government limited to proof of the listed examples of the means and methods of the conspiracy in proving its case or arguing for an appropriate sentence.  If a jury finds Leoner-Aguirre guilty of the racketeering conspiracy charged in Count Two of the Indictment, this Court should hold him responsible at sentencing for any relevant conduct proven by a preponderance of the evidence.  The defendant's motion for a jury determination of attempted murder predicates should be DENIED.

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By:   */s/ Kunal Pasricha*
KUNAL PASRICHA

PETER K. LEVITT
CHRISTOPHER J. POHL
GLENN A. MACKINLAY
Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way, Suite
9200 Boston MA 02210

## CERTIFICATE OF SERVICE

I, Kunal Pasricha, certify that on September 5, 2017, I served this document upon counsel of record by filing it through the CM/ECF system.

*/s/ Kunal Pasricha*
KUNAL PASRICHA
Assistant United States Attorney

14